UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SNAPNAMES.COM, INC. et al.,

Plaintiffs,

v.

MICHAEL CHERTOFF, et al.,

Defendants.

No. CV 06-65-MO

OPINION & ORDER

**MOSMAN, J.,**

In this immigration case, the Administrative Appeals Office ("AAO") denied SnapNames.com, Inc.'s ("SnapNames") employment-based visa petitions filed on behalf of Sanjay Agarwal seeking to classify him as a "skilled worker" and a "professional" under 8 U.S.C. § 1153(b)(3)(A)(i), (ii), and a "member of the professions holding advanced degrees" under 8 U.S.C. § 1153(b)(2)(A). The AAO concluded (1) SnapNames failed to prove it could pay Mr. Agarwal's proffered wage, and (2) Mr. Agarwal does not meet the educational requirements for the position he seeks with SnapNames. SnapNames filed suit seeking judicial review of the AAO's denials. Thereafter, defendants filed a motion to dismiss (#13) and SnapNames filed a cross motion for summary judgment (#18). On November 3, 2006, the court held oral argument. The court found in favor of SnapNames on the ability-to-pay issue, GRANTING its motion for summary judgment and DENYING defendants' motion to dismiss as to this issue. On the

educational requirement issue, the court found in favor of SnapNames regarding the "skilled worker" classification, but in favor of defendants as to the "professional" and "member of the professions holding advanced degrees" classifications. After the court's oral ruling, the parties requested further clarification of this latter holding. This opinion addresses that request. The ability-to-pay issue, however, was sufficiently addressed at the hearing and is not further discussed.

**BACKGROUND**

Mr. Agarwal is originally from India. In the 1980s he attended the University of Calcutta and received a three year Bachelor of Commerce (Honours) degree. AR[1] at 30. Thereafter, he attended the Institute of Chartered Accountants of India and completed all the required course work and examinations to become a member. AR 32-35.

In February 2002, Mr. Agarwal began working for SnapNames. In August 2002, SnapNames began seeking an employment visa on Mr. Agarwal's behalf. First, the company filed an Application for Alien Employment Certification ("labor certification") with the Oregon Employment Department. AR at 8. In its application, SnapNames named Mr. Agarwal and described the position being offered to him. The company stated the educational requirements for the job were four years high school, four years college, and a "B.S. or foreign equivalent" in Computer Science or Accounting." *Id.*

In November 2002, the San Francisco Regional Office of the Department of Labor ("DOL") approved SnapNames's application and issued the following certification:

Pursuant to the provisions of Section 212 of the Immigration and Nationality Act

[1] "AR" refers to the Administrative Record.

> as amended I hereby certify that there are not sufficient U.S. workers available and the employment of the above will not adversely affect the wages and working conditions of workers in the U.S. similarly employed.

AR at 8. Thereafter, SnapNames filed two Immigrant Petitions for Alien Worker (I-140) with the Nebraska Service Center ("NSC") on Mr. Agarwal's behalf. In the first petition, SnapNames sought to have Mr. Agarwal classified as a "skilled worker" or a "professional" under 8 U.S.C. § 1153(b)(3)(A)(i), (ii). In the second, the company sought to have him classified as a "member[] of the professions holding advanced degrees" under 8 U.S.C. § 1153(b)(2). In support of its petitions, SnapNames submitted several professional evaluations concluding Mr. Agarwal's education is equivalent to an American baccalaureate degree.

The NSC denied both of SnapNames's petitions, finding Mr. Agarwal does not have the requisite educational background. Considering his commerce degree from the University of Calcutta, the agency stated: "According to the education evaluations submitted with this petition, this is a three-year course of study, and is equivalent to three-years of university level credit from an accredited college or university in the United States. The course of study and resulting degree are therefore not equivalent to a United States baccalaureate degree." AR at 140, 208. The agency also concluded that the equivalent to a U.S. bachelor's must be "a *single-source, foreign degree*," AR at 141 (emphasis added), and that combined education and experience is not sufficient. AR at 208. Mr. Agarwal's failure to meet the educational requirement specified by the labor certification and applicable statute and regulations was the NSC's sole basis for denying SnapNames's petitions.

SnapNames appealed the NSC's decision to the AAO. Explaining that it lacked the authority to ignore or change the job requirements specified in the DOL's certification, the AAO

also concluded Mr. Agarwal was not qualified for SnapNames's certified position because he does not have the requisite degree or its foreign equivalent. AR at 159, 244. Again, the AAO concluded Mr. Agarwal's three-year commerce degree is not equivalent to a U.S. bachelor's because it is only a three-year, subject-specific degree that does not include the general education requirements of an American degree. AR at 167-68. The AAO also agreed with the NSC that Mr. Agarwal must have a single equivalent degree and therefore consideration of Mr. Agarwal's additional education or work experience is inappropriate. However, the AAO further concluded that even considering Mr. Agarwal's additional education and membership in the Institute of Chartered Accountants of India, he does not meet the degree requirement because this was also a subject-specific course of study. AR at 168.

## DISCUSSION

### I.) Legal Standards

The court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In determining whether this standard is met, the court considers only the pleadings and must "presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). Where the court considers matters outside the pleadings, the motion to dismiss is treated as a motion for summary judgment under Fed. R. Civ. P. 56. *Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995). As far as the educational requirements issue addressed in this opinion, the court treats the parties' motions as cross motions for summary judgment.

Summary judgment is only appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of "pointing out" the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden is met by showing an absence of evidence to support the non-movant's case. *Id.* In order to defeat summary judgment, the non-moving party must then set forth "'specific facts showing there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (citation omitted).

The agency's decision finding Mr. Agarwal is not qualified can only be overturned if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1206 (9th Cir. 2004). Significant deference is afforded to the agency's factual findings, particularly in relation to issues implicating the agency's expertise. *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002). Further, the agency is afforded *Chevron* deference in interpreting the statute it is charged with enforcing. *Az. State Bd. For Charter Schs. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1006-07 (9th Cir. 2006). Thus, the court must "look first to the statutory text to see whether Congress has spoken directly to the question at hand." *Id.* at 1006 (internal quotation marks and citation omitted). If Congress has spoken clearly, "that is the end of the matter," and the plain language controls. *Id.* But, where the language is ambiguous, the court must "defer to the agency's

interpretation if it is based on a permissible construction of the statute." *Id.* at 1006-07 (internal quotation marks and citation omitted). "The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position." *Id.* at 1007 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (footnotes omitted)). Further, the agency is afforded even greater deference in interpreting its regulations. Thus, its decision "controls unless it is plainly erroneous or inconsistent with the regulation[s]." *Nev. Land Action Ass'n v. U.S. Forest Serv.*, 8 F.3d 713, 717 (9th Cir. 1993) (internal quotation marks and citations omitted).

At all times, the visa petitioner bears the burden of proving the alien on behalf of whom the petition is made is qualified for the immigration benefits sought. *In re Martinez*, 1997 WL 602544 (BIA 1997) (citing *Matter of Patel*, 19 I&N Dec. 774 (BIA 1988); *Matter of Soo Hoo*, 11 I&N Dec. 151 (BIA 1965).

**II.) Educational Requirement**

As indicated above, SnapNames sought three different visa classifications on behalf of Mr. Agarwal: (1) "skilled worker" under 8 U.S.C. § 1153(b)(3)(A)(i), (2) "professional" under 8 U.S.C. § 1153(b)(3)(A)(ii), and (3) "member[] of the professions holding advanced degrees" under 8 U.S.C. § 1153(b)(2)(A).

A.) "Skilled Worker"

To qualify as a "skilled worker," the alien must be "capable . . . of performing skilled labor (requiring at least 2 years training or experience), not of a temporary or seasonal nature, for which qualified workers are not available in the United States." 8 U.S.C. § 1153(b)(3)(A)(i).

The regulations further specify a skilled-worker petition "must be accompanied by evidence that the alien meets the educational, training or experience, and any other requirements *of the individual labor certification*. 8 C.F.R. § 204.5(l)(3)(ii)(B) (emphasis added).

Here, SnapNames's labor certification specifies an educational requirement of four years of college and a "B.S. or foreign equivalent." AR at 8. The AAO found Mr. Agarwal does not meet this requirement[2] based on its interpretation of "B.S. or foreign equivalent." Specifically, the AAO made two interpretive decisions. First, that the "foreign equivalent" must be solely in terms of *educational background* and not a combination of education and work experience. And second, that the "foreign equivalent" must be a *single degree*, thereby precluding consideration of combined educational experiences. Before addressing the substance of the AAO's decision, however, the administrative context in which this issue arises must be addressed.

1.) **Administrative Context**

Certain employment-based visa petitions, including those for "skilled workers," require a labor certification. 8 C.F.R. § 204.5(l)(3)(i). However, this certification is not a Citizenship and Immigration Services ("CIS") function. Rather, it is a function performed by the Department of Labor ("DOL"). Thus, as happened here, the petitioner submits an application for certification to the DOL describing the job at issue and identifying the alien beneficiary. *See* AR at 8. The petitioner also defines the "MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties." *Id.* In issuing the certification, the DOL considers the job, as defined by the petitioner, and certifies that (1) "there are not sufficient workers who are able, willing, qualified . . . and available at the time of application for a visa and admission to the

---

[2]The parties agree Mr. Agarwal otherwise meets the labor certification requirements.

United States and at the place where the alien is to perform such skilled . . . labor," and (2) "the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1182(a)(5)(A)(i).

Once certified, the petitioner applies for a visa with CIS, submitting DOL's certification in support as required by the regulations. 8 C.F.R. § 204.5(l)(3)(i). It is then CIS' responsibility to determine whether the alien is qualified for a visa under the applicable statute and regulations and under the terms of the certification. 8 U.S.C. § 1154(b);[3] 8 C.F.R. § 204.5(l)(3)(ii)(B).

Because there are two separate agencies involved in this process, there has been some confusion about the proper division of authority. Specifically, some have argued that by issuing a labor certification, the DOL establishes the named alien meets the requirements specified therein, depriving CIS of the authority to find otherwise. *See K.R.K. Irvine, Inc. v. Landon*, 699 F.2d 1006 (9th Cir. 1983); *Madany v. Smith*, 696 F.2d 1008 (D.C. Cir. 1983). This argument has been firmly rejected. In *Landon*, the Ninth Circuit held:

---

[3]Section 1154(b) states:

> After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section 1153(b)(2) [members of the professions holding advanced degrees] or 1153(b)(3) [skilled workers] of this title, the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is . . . eligible for preference under subsection (a) or (b) of section 1153 of this title, approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status.

> [T]he statutory provisions . . . demonstrate[] that there is a careful division of functions between the Secretary of Labor and the INS. On the face of these provisions, it appears that the DOL is responsible only for determining the availability of suitable American workers for a job and the impact of alien employment upon the domestic labor market. It does not appear that the DOL's role extends to determining if the alien is qualified for the job for which he seeks. . . . That determination appears to be delegated to the INS under . . . 8 U.S.C. § 1154(b), as one of the determinations incident to the INS's decision whether the alien is entitled to [a visa].

699 F.2d at 1008 (citing 20 C.F.R. § 656.2(e)). Similarly, the D.C. Circuit explained:

> Although the [INA] allocates a limited role to DOL, it vests primary responsibility for implementation with INS.
> There is no doubt that the authority to make preference classification decisions rests with INS. The language of [8 U.S.C. § 1154] cannot be read otherwise. In turn, DOL has the authority to make the two determinations listed in section [1182(a)(14)].[4] The necessary result of these two grants of authority is that section [1182(a)(14)] determinations are not subject to review by INS absent fraud or willful misrepresentation, but all matters relating to preference classification eligibility not expressly delegated to DOL remain within INS' authority.
> The review here in question concerns the alien's skills or qualifications and is not one of the inquiries expressly allocated to DOL by section [1182(a)(5)]. This does not mean that DOL cannot, or does not, undertake analysis of an alien's qualifications as it performs its statutory functions. Indeed, DOL may gauge an alien's skill level in evaluating the effect of the alien's employment on United States workers. The fact that DOL may find such an analysis useful, however, does not foreclose INS from considering alien qualifications in the preference classification decision.

*Madany*, 696 F.2d at 1012. Therefore, to the extent SnapNames argues the DOL certification precludes the AAO from considering whether Mr. Agarwal meets the educational requirements specified in the labor certification, it is in error.

That easier issue aside, the real question here concerns CIS' role in *interpreting* the labor certification. In this case, the AAO found Mr. Agarwal not qualified based on its interpretation

---

[4]The case references section 212(a)(14) of the INA, which ordinarily would translate into 8 U.S.C. § 1182(a)(14). However, the structure of the statute has been amended since this case was published and the language being referred to now exists at 8 U.S.C. § 1154(a)(5).

of "B.S. or foreign equivalent," as stated in the labor certification. The agency argues it is entitled to interpret this phrase consistent with its understanding of similar language in its regulations. *See* 8 C.F.R. § 204.5(l)(2) (defining "professional" as one who "holds at least a United States baccalaureate degree or a foreign equivalent degree"). On the other hand, SnapNames argues that because it defined the educational requirements in the labor certification, the language should be construed in light of its understanding and not the agency's, which is based on regulatory language not applicable to "skilled workers" petitions.

SnapNames has the better argument. CIS does not have the authority to define the particular employment position or the necessary qualifications for such. Rather, CIS must "examine the certified job offer exactly as it is completed by the prospective employer." *Rosedale & Linden Park Co. v. Smith*, 595 F. Supp. 829, 833 (D.C.D.C. 1984). Speaking directly to this issue, the D.C. Circuit stated:

> We recognize that the statutory division of authority between DOL's labor certification determination and INS' preference classification decision can lead to some discontinuity insofar as DOL-imposed job requirements are subject to interpretation by INS in its review of the alien's qualifications. Accordingly, INS will need the sensitivity to coordinate DOL and INS interpretations and to follow the Act's directive to consult with DOL when correctable discrepancies between the alien's qualifications and the labor certification job requirements appear. INS must also recognize that DOL bears the authority for setting the content of the labor certification and that it cannot impose job qualifications beyond those contemplated therein.

*Madany*, 696 F.2d at 1015.

Thus, in interpreting the labor certification, the agency must start with the plain meaning of the petitioner's language, if such exists. Where the language is ambiguous, however, a question arises as to how much deference to afford the agency's interpretation. Relating back to an agency's statutory interpretation, defendants argue the court must defer to the agency so long

as its interpretation is reasonable. *Az. State Bd. For Charter Schs.*, 464 F.3d at 1006. However, such deference is afforded in recognition that the agency has specific expertise over matters addressed in the statute it enforces. *Natural Res. Def. Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1292, 1297 (9th Cir. 1992) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). The labor certification is not analogous to the agency's statute in this manner. The labor certification is an occupational assessment performed by DOL based on the requirements specified by the prospective employer and petitioner. CIS does not have any particular expertise in relation to an employer's needs or intent in defining employment positions. Likewise, it has no particular expertise as to the certification performed by DOL. Thus, there is no justification for affording deference to the agency's interpretation in this context. With that in mind, I now consider the AAO's interpretation of SnapNames's labor certification.

2.) **The Agency's Interpretive Decision–**
What does the labor certification's "B.S or foreign equivalent" requirement mean?

As stated, the AAO first concluded "B.S. or foreign equivalent" relates solely to educational background, precluding consideration of combined education and work experience. Looking to plain meaning of SnapNames's words, I agree with the agency's conclusion. There is no indication in the requirements that the employee have "four years of college" and a "B.S. or foreign equivalent" that something other than equivalent educational background will suffice. SnapNames argues this conclusion "ignores the likely interpretation that the labor certification contemplated someone who had the foreign equivalent of a U.S. bachelor's degree as decided by qualified professional service evaluators." Pl.'s Resp. Mot. to Dismiss at 9. While this may be a reasonable standard, it is not specified in the labor certification, and whereas SnapNames defined

the employment requirements in the labor certification, if this was its intent it could have easily so stated. Instead, however, in the box titled "College Degree Required," SnapNames specified "B.S. or foreign equivalent," indicating a specific level of *educational background* was required.[5]

Judge Papak recently came to a different conclusion construing similar but not identical language. *Grace Korean United Methodist Church v. Chertoff ("Grace Korean")*, 437 F. Supp. 2d 1174 (D. Or. 2005). He held:

> Defendants contend Plaintiffs established a specific degree requirement by use of the phrase "B.A. or equivalent." This argument is also untenable as it offers an explanation for its decision that runs counter to the evidence before the agency and is based on an implausible construction of the language in the labor certification.
>
> It is the employer, working under the supervision and direction of OED and DOL, that establishes the requirements for employment. CIS looks to education and experience requirements in the labor certification to determine whether the applicant falls within the skilled worker or professional classification. That determination should be "based on the requirements of training and/or experience placed on the job by the prospective employer, as certified by the Department of Labor." 8 C.F.R. § 204.5( l )(4). It is the responsibility of the employer, not CIS, to establish the criteria for the open position. It is undisputed that the [plaintiff employer] intended the language "B.A. or equivalent" to include degree equivalency based on education and experience, because it drafted the labor certification with [the employee] in mind. It is also not in dispute that [the employee] possessed the equivalent of a bachelor's degree . . . based on her unique combination of education and relevant experience.
>
> CIS does not have the authority or expertise to impose its strained definition of "B.A. or equivalent" on that term as set forth in the labor certification. *Tovar v. U.S. Postal Service*, 3 F.3d 1271, 1276 (9th Cir.1993) (stating that U.S. postal Service has no expertise or special competence in immigration issues); *Omar v. INS*, 298 F.3d 710, 714 (8th Cir.2002), overruled in part on other grounds, *Leocal v. Ashcroft*, 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004) (finding INS interpretation of criminal statute not entitled to deference). If any agency has the power to define the job qualifications set forth in a labor certification, it is the

---

[5]It should be noted that on appeal to the AAO, SnapNames submitted additional statements from its expert education evaluators stating their conclusions that Mr. Agarwa has the equivalent to an American baccalaureate was based solely on his educational background and did not take into account his work experience. AR at 236-39.

> DOL, the agency responsible for reviewing and adjudicating the labor certification. Here, the only evidence before this court is that DOL and OED worked with the [plaintiff employer] in drafting the labor certification and advertising the position, knowing full well [the employee's] credentials.

*Id.* at 1179.

Here, SnapNames also filled out the labor certification with Mr. Agarwal in mind. However, CIS has an independent role in determining whether the alien meets the labor certification requirements, and where the plain language of those requirements does not support the petitioner's asserted intent, the agency does not err in applying the requirements as written. In fact, the agency is obligated to "examine the certified job offer *exactly as it is completed* by the prospective employer." *Rosedale & Linden Park Co.*, 595 F. Supp. at 833 (emphasis added). To require the agency to go beyond the certification's plain language, where such exists, would not only be inconsistent with this obligation, it would undermine the agency's role in independently determining whether the alien meets the specified requirements.

In addition, interpreting the labor certification on the basis of the named alien's background could undermine the DOL's certification. For example, DOL certified that employing the named alien will not "adversely affect" domestic workers. 8 U.S.C. § 1182(a)(5)(A)(i)(II). But, allowing a combination of education and work experience to count for alien workers while at the same time requiring a specific degree from domestic workers puts domestic workers at a disadvantage.

For these reasons, I find the agency's conclusion that work experience is not properly considered in determining whether the alien has a "B.S. or foreign equivalent" is not arbitrary and capricious as it is supported by the plain meaning of SnapNames's labor certification.

As for the agency's second conclusion that "B.S. or foreign equivalent" requires a *single*

*degree* thereby precluding consideration of combined educational experiences, I find the labor certification's language ambiguous. On one hand, "equivalent" is defined as "equal in force, amount, or value." *Merriam-Webster's Collegiate Dictionary* 423 (11th ed. 2005). Certainly it is possible for multiple educational experiences, as well a single degree, to be equal in amount or value to a U.S. baccalaureate. Further, "equivalency" inherently means something different than "sameness." Otherwise, there is no need to specify "B.S. *or foreign equivalent*;" "B.S." alone would suffice. On the other hand, in addition to requiring four years of college, SnapNames specified a degree requirement. This suggests that not only is the company interested in a quantitatively equivalent education, but also an equivalent result.

In resolving this ambiguity, the AAO stated: "Neither the statute nor the conforming regulations allow for alternatives to the requirement of the specific degree required on the [labor certification application], whether the equivalency is based on work experience of a combination of lesser educational degrees and certifications, professional memberships or other training." AR at 168. The problem with this analysis, however, is that unlike the other employment visa categories yet to be discussed, there are no statutory or regulatory educational requirements for "skilled workers." Rather, educational requirements only arise in this context when specified by the prospective employer in the labor certification. Thus, the agency's interpretation of SnapNames's educational requirement should be informed by SnapNames's intent, to the extent possible, and not on the agency's understanding of similar but inapplicable regulatory language.

Here, in support of its petition, SnapNames submitted a letter from its CFO explaining: "When we use the term 'foreign equivalent' in the DOL application, we mean we would accept any foreign academic credentials submitted as evidence of a B.S. equivalent by a credentialing

agency that is a member o the National Association of Credential Evaluation Services, Inc." AR at 151. This is strong, undisputed evidence of SnapNames's intent, which the agency apparently did not even consider.

Further, 8 U.S.C. § 1154(b) requires the agency to consult with DOL before deciding whether to approve or deny "skilled worker" visa petitions. *See Madany*, 696 F.2d at 1012. There is no evidence this was done in this case. Rather, the AAO stated, "the issuance of a labor certification does not bind CIS to accept the employer's, or even the [DOL]'s definition of the amount and kind of experience that should be considered the equivalent of a college degree." AR at 165. The agency also cited *In re Hong Video Technology*, 2001 WL 1055170 (BALCA 2001), concluding that, in any event, its interpretation is consistent with the DOL's. However, in *Hong Video*, the named alien's education was only equivalent to an associate's degree, and the employer sought a visa on the basis of the alien's combined education and work experience. The DOL rejected this interpretation, explaining it would put foreign workers at an advantage over domestic workers. *Id.* at *3. Therefore, this case does not reveal the DOL's view of whether it is appropriate to consider combined *educational experiences* in meeting a "B.S. or foreign equivalent" requirement.

As such, I find the agency's conclusion that the labor certification requires a *single* equivalent degree is arbitrary and capricious. It is clear the agency simply relied on its prior interpretation of similar but inapplicable regulatory language and failed to appreciate the difference between interpreting the labor certification and statutory or regulatory provisions. *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002) ("Agency action should be overturned only when the agency has relied on factors which Congress has not intended it to

consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.") (internal quotation marks and citation omitted).

3.) **The Agency's Substantive Decision–**
Does Mr. Agarwal meet the labor certification's educational requirements?

In spite of its single-degree interpretation, the agency further concluded that even considering Mr. Agarwal's combined educational background, he fails to meet the labor certification's degree requirement. Specifically, the AAO reasoned that Mr. Agarwal does not have the equivalent to an American baccalaureate because whereas American students are required to take general education courses to earn a degree, his degrees are subject-specific. AR at 168. However, several professional academic evaluators concluded Mr. Agarwal's combined education is equivalent to an American degree, AR at 166-67, 236-39, and there is no such evidence concluding Mr. Agarwal's education is not the "foreign equivalent" to a B.S. Further, under the agency's reasoning, a foreign education would only qualify as "equivalent" where it is based on Western educational theory. This would certainly be a significant policy statement were it intended. Defendants have not cited anything in support of this view, and I am hesitant to accept it. As discussed above, "equivalency" is not "sameness." Therefore, I also find the AAO's conclusion that Mr. Agarwal's combined educational background is not the "foreign equivalent" to an American baccalaureate degree is arbitrary and capricious and cannot be sustained. 5 U.S.C. § 706(2)(A).

B.) "Professional"

Next, SnapNames sought to have Mr. Agarwal classified as a "professional" under 8

U.S.C. § 1153(b)(3)(A)(ii). "Professionals" include "[q]ualified immigrants who hold baccalaureate degrees and who are members of the professions." *Id.* The regulations further specify that a professional must have "at least a United States baccalaureate degree or a foreign equivalent degree." 8 C.F.R. § 204.5(l)(2).

Again, the AAO employed its single-degree interpretation and found Mr. Agarwal does not qualify for this visa because he does not have the equivalent of a U.S. baccalaureate. However, unlike in the "skilled worker" context, here the agency was interpreting the statute it is charged with enforcing, as well as its own regulations. As such, the agency's decision is afforded significant deference. *Az. State Bd. For Charter Schs.*, 464 F.3d at 1006-07; *Nev. Land Action Ass'n*, 8 F.3d at 717.

SnapNames argues the AAO's interpretation is unreasonable because Congress did not explicitly say *one* qualifying degree is required. That may be true, but this argument only furthers the agency's position. Because Congress did not explicitly addressed whether one degree or a combination of degrees is sufficient, the agency has the authority to interpret the statutory language and develop regulations to fill in the gaps. *Natural Res. Def. Council, Inc.*, 966 F.2d at 1297. The applicable regulation adopted by the agency states the alien must have "at least . . . *a* foreign equivalent degree," and that in proving this requirement, the alien must submit "an official college or university record showing the date the baccalaureate *degree* was awarded." 8 C.F.R. § 204.5(l)(2)& (3)(ii)(C) (emphasis added). Based on this language, it is within the agency's authority to conclude a single equivalent degree is required. Simply because it may also be reasonable to interpret this language as allowing a combination of degrees or educational programs to satisfy the requirement, does not mean the court can disturb the agency's decision.

*Nev. Land Action Ass'n*, 8 F.3d at 717 (can only overturn agency's regulatory interpretation where it is "plainly erroneous or inconsistent with the regulation[s]").

SnapNames also suggests the agency's interpretation is arbitrary and capricious because the agency has not consistently applied the single-degree interpretation. It is true inconsistent interpretations from the agency can render its decision arbitrary and capricious. *Lin v. U.S. Dept. of Justice*, 459 F.3d 255, 262 (2d Cir. 2006) (citing *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 356 (2000)). However, the evidence SnapNames relies on in support of this argument are minutes from various immigration law conferences where CIS representatives, responding to specific questions, indicated a final policy decision has not yet been made regarding equivalent educational background. *See* Chen Aff., Ex. B & C.[6] Informal statements from the agency are not binding and are not a proper basis for denying the agency the deference it is otherwise due. *Chan v. Reno*, 113 F.3d 1068, 1073 (9th Cir. 1997) ("[U]npublished precedent is a dubious basis for demonstrating the type of inconsistency which would warrant rejection of deference.") (internal quotation marks and citation omitted); *Kwan v. Donovan*, 777 F.2d 479, 482 (9th Cir. 1985); *R.L. Inv. Ltd. Partners v. I.N.S.*, 86 F. Supp. 2d 1014, 1022 (D. Haw. 2000). Thus, I find the record in this case fails to create a genuine issue of disputed material fact regarding whether the agency's interpretation of its statute and regulations was arbitrary and capricious.

At oral argument, defendants questioned the propriety of upholding interpretations of

---

[6] During a meeting between the American Immigration Lawyers Association and CIS representatives on September 22, 2005, the agency was asked whether a single equivalent degree is required or whether a combination of educational experiences are properly considered in evaluating employment-based visa petitions. The agency responded: "There has been a difference of opinion on this issue internally as []CIS. That difference is being worked out and []CIS representatives expect []CIS to issue and interpretive memo on educational degrees." Chen Aff., Ex. B at 4-5.

substantially similar language as requiring a single degree in one context but allowing consideration of combined educational experiences in another. Though I recognize the apparent inconsistency, this result is easily explained in light of the difference between the texts being interpreted and the level of deference properly afforded the agency. Where the agency is interpreting its statute and regulations, it must determine Congress's intent or its own intent–areas where it has specific expertise. On the other hand, as discussed at length above, the visa petitioner defines the labor certification requirements and therefore, where ambiguous, those requirements must be interpreted in light of the petitioner's intent. This distinction makes all the difference in this case. Thus, it is perfectly consistent to uphold the agency's single-degree interpretation in relation to the "professional" classification while at the same time rejecting this interpretation in relation to the "skilled worker" petition.

D.) "Member[] of the Professions Holding Advanced Degrees"

Finally, SnapNames sought to have Mr. Agarwal classified as a "member[] of the professions holding advanced degrees or their equivalent" under 8 U.S.C. § 1153(b)(2)(A). The regulations define "advanced degree" as "any United States academic or professional degree or a foreign equivalent degree above that of baccalaureate." 8 C.F.R. § 204.5(k)(2). An alien can also be classified under this provision if he has a "United States baccalaureate degree or a foreign equivalent degree followed by at least five years of progressive experience." *Id.*

Again, interpreting the relevant statutory and regulatory provisions, the AAO denied SnapNames's petition finding Mr. Agarwal does not have the equivalent of an American baccalaureate degree. Consistent with my conclusion above, I find the agency's interpretation on this point is also entitled to deference.

## III. Conclusion

As is clear from the foregoing discussion, the key to this case is the proper level of deference afforded to the agency. In interpreting the labor certification requirements, the agency is not entitled to much, if any, deference. These requirements were specified by SnapNames and fall outside the agency's area of expertise. Therefore, even though the agency must interpret these requirements, to do so in light of its understanding of similar but inapplicable statutory provisions instead of SnapNames's intent, where clear evidence of such exists, was arbitrary and capricious. On the other hand, where the agency's decision depends on an interpretation of its statute and regulations, it is afforded great deference and must be upheld if reasonable. Here, the agency's interpretation of the statutory and regulatory educational requirements for "professionals" and "members of the profession holding advanced degrees" was reasonable. Therefore, as there are no material disputes of fact involved in the issues presented by the parties but only questions of law properly decided by the court, SnapNames's motion for summary is GRANTED IN PART as to its "skilled workers" petition and DENIED IN PART as to the "professional" and "member of the professions holding advanced degrees" petitions. Likewise, defendants' cross motion for summary judgment is DENIED IN PART as to the "skilled worker" petition and GRANTED IN PART as to the other employment-based visa categories.

IT IS SO ORDERED.

DATED this 30th day of November, 2006.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court